CLERK'S COPY
COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

AUG 3 1 1999

Robert M. March
CLERK

Civil Action No. 94-1141JP/WWD

HEALTH COST CONTROLS,

    Plaintiff,

vs.

DAVID YOUNG, AS PARENT AND NATURAL GUARDIAN OF NICHOLAS YOUNG, A MINOR, GERALD L. COLLINS, AS GUARDIAN AD LITEM OF NICHOLAS YOUNG, A MINOR, AND KARL W. SCHOTH, INDIVIDUALLY, AND AS CUSTODIAN OF THE PROCEEDS OF THE SETTLEMENT FUNDS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter having been tried to the Court, the Honorable William F. Downes, United States District Judge for the District of Wyoming, sitting by designation, presiding, the Court having considered the evidence advanced at trial, having heard the argument of counsel and being otherwise fully advised in the premises, hereby FINDS and ORDERS as follows:

### Background

The Court herein incorporates by reference the Parties' Mutually-Approved Findings of Fact and Conclusions of Law (hereinafter "MAFF"). This stipulation thoroughly sets forth the core facts of this case. Consequently, the following section will briefly focus on the trial.

The trial of this matter commenced April 6, 1998. Plaintiff sought declaratory and equitable relief under the reimbursement provisions of its health insurance policy. Plaintiff also asserted a claim of tortious interference with business relationship against Defendant Schoth.

1

Following opening statements and the stipulated admission of certain exhibits,[1] Plaintiff called Mr. Karl Schoth to testify about his representation of Nicholas Young in the state court negligence action against Dr. Bruce J. Schuurmann. Mr. Schoth described how he was retained and how he and counsel for Dr. Schuurmann, Mr. Richard Puglisi,[2] ultimately began settlement negotiations. Mr. Schoth relayed the process by which he and Mr. Puglisi ultimately arrived at a seven hundred thousand dollar ($700,000) settlement figure subject to liens and approval from the court. Schoth later described how he pursued the equitable reduction of liens on the settlement amount and ultimately disbursed the settlement proceeds.[3]

Plaintiff next called Ms. Gerry Aster to testify primarily about her letter to Mr. Schoth and her evaluation of Nicholas Young's case. *See* Exh. 5 Attch. H. Ms. Aster testified that Attachment H was merely a summary of the comments relayed to her by one Dr. Villablanca. She also testified that the reports she prepared, Attachments H and I, would not be helpful in determining which of Nicholas Young's medical bills would have been incurred regardless of when he was properly diagnosed. In response to a question by the Court, Ms. Aster indicated that she did not know how the report arrived at the $100,000 to $150,000 figure of "inevitable" medical costs.

---

[1] The Court received Exhibits 1-4, 6-8, 10-16, 18-23, 27, 28, 32-40, 42-50, and 52-55.

[2] Mr. Puglisi is currently a United States Magistrate Judge for the District of New Mexico.

[3] During Mr. Schoth's testimony, Exhibits 5, 24-26, 30, and 41 were conditionally received. Defendants argued that these Exhibits should be excluded because they did not relate relevant information. Defendants further complained that certain of the Exhibits were being offered for the substance of the matters asserted therein, particularly relating to the "inevitability" of certain medical expenses (i.e. the report of Ms. Gerry Aster). The Court will overrule Defendants' objections to the extent the Exhibits constitute admissions by party opponent. Fed. R. Evid. 801(d)(2). Plaintiff, however, has made no showing that any hearsay within such exhibits should be considered for the truth of the matters asserted. The documents certainly reflect the chronology of events and the positions adopted by Defendants, but just as certainly cannot substitute for the live testimony of any third party declarant.

Mr. Henry Romano, general counsel for Health Cost Controls, next testified for the Plaintiff. Romano generally testified about reimbursement procedures utilized by Plaintiff. After a lengthy discussion regarding the meaning of court orders issued during discovery in this case, Mr. Romano discussed how the actual service agreement between Celtic and Health Cost Controls could not be located. After a protracted and fairly confusing discussion regarding testimony and documents (i.e. Plaintiff's Exh. 56) related to the purported assignment of fiduciary status to Plaintiff, the Court recessed.

The following day, Mr. Romano resumed testifying about the procedure for asserting claims on behalf of Plaintiff's clients. Notably, during voir dire of the witness concerning the admissibility of Plaintiff's Exhibit 51, Mr. Romano testified that Plaintiff's right to recovery, as outlined by its reimbursement provision, was predicated on some act or omission of a third party. After some additional testimony, the Plaintiff rested.[4]

Following Defendants' motion for judgment as a matter of law under Federal Rule of Civil Procedure 50, and Defendants' response,[5] Defendants called Mr. Schoth to the stand to testify in the narrative. Mr. Schoth testified extensively about the events of, and his state of mind during, his representation of Nicholas Young in the medical malpractice action against Dr. Schuurmann. Defendants concluded their case-in-chief by presenting the testimony of Mr. David Young, the father of the deceased Nicholas Young.

The Court later received the deposition of Dr. Mark Erasmus. The Court then heard closing argument of counsel in November 1998.

---

[4] The parties of course understood that the additional deposition testimony of Dr. Mark Erasmus was to be considered by the Court in its decision in this case.

[5] The Court took Defendants' Rule 50 motion under advisement.

3

## Discussion

Plaintiff seeks a judgment against Defendants Young and Schoth, jointly and severally, in the amount of $200,000. Plaintiff also seeks its costs and attorney fees under 29 U.S.C. § 1132(g).

A.   *Reimbursement*

The parties dispute whether Plaintiff possesses standing to bring this claim or can recover the remedy it seeks. The parties also dispute whether ERISA preempts New Mexico's equitable lien reduction statute. The Court, however, ultimately believes that on the merits Plaintiff has failed to establish its entitlement to reimbursement. As a result, the Court need not reach the parties' extraneous arguments and will, for the purposes of this Order, assume without deciding that Plaintiff prevails on these issues.

At trial, Plaintiff relied on several pieces of evidence to argue its right to reimbursement in this case, including: 1) the reimbursement provision itself; 2) various documents filed in the underlying negligence action; 3) the existence of the settlement; 4) the testimony of Gerry Aster; 5) New Mexico's damage cap statute; and 6) the deposition testimony of Dr. Mark Erasmus.

The Celtic Certificate booklet contains the following reimbursement provision:

**Right of Reimbursement**

> An insured person may be paid benefits under the policy and also receive recovery from a person or organization responsible for causing the loss, or their insurer(s). The recovery may be in the form of a settlement, judgment, or other payment. The insured person must reimburse the insurance company from these recoveries in an amount up to the benefits paid from the health Insurance Plans.

MAFF at ¶ 13. The next two paragraphs explain the Court's plain reading of this reimbursement language.

4

In three consecutive sentences, the reimbursement section uses a variation of the word "recover." The first sentence explains "recovery" as derived "from a person . . . responsible for causing the loss." In clarifying what constitutes a "loss," the policy states that an insured person may be *paid benefits* under the policy and also receive recovery from a person or organization responsible for causing *the loss*. The policy therefore clearly equates any "loss" with "the payment of benefits." The third sentence, which states the insured's duty to reimburse, can therefore plainly be read as requiring the insured person to reimburse Plaintiff from *recoveries from a person responsible for causing the payment of benefits* in an amount up to the benefits paid from the Health Insurance Plans.

It is beyond dispute that Plaintiff bears the burden of establishing, by the weight of the evidence, its entitlement to reimbursement under the policy. The issue in this case thereby becomes whether Plaintiff has sufficiently demonstrated that Defendants received a recovery from a person responsible for *causing the payment of benefits*.[6]

Indeed, a lawsuit was filed against Dr. Schuurmann *alleging* that his negligence caused Nicholas Young damages which included past and future medical expenses. Mr. Schoth also, at one point, pleaded for the equitable reduction of the liens and asserted that between $100,000 and $150,000 of Plaintiff's payments would have been "inevitable" had Nicholas Young been properly diagnosed. These figures would have left approximately three to four hundred thousand dollars in medical payments as being directly caused by Schuurmann's negligence. But do these assertions establish that Dr. Schuurmann was responsible for causing the payment of benefits?

Of course Mr. Schoth, as Nicholas Young's attorney, alleged in his Complaint that Dr.

---

[6] This burden was confirmed by Plaintiff's own general counsel, who acknowledged that HCC's right to reimbursement hinged on some act or omission of a third party.

5

Schuurmann caused extensive damages, including substantial medical care. Although Mr. Schoth was arguably prepared to prove the nature and extent of damages caused by Schuurmann's negligence at trial, settlement obviated the need for this endeavor.[7] Such settlement does not, however, obviate Health Cost Controls' need to prove its case to this Court. It is also not surprising that Mr. Schoth attempted to reduce the liens as much as possible. There is no allegation of an ethical violation by counsel, and Mr. Schoth put forth evidence which persuaded the judge to adopt his client's position. The positions taken by Mr. Schoth on behalf of his client in the underlying malpractice suit, even if contrary to Schoth's assertions in this case, do precious little to *prove* Plaintiff's case here.

The Court believes that Ms. Aster's testimony did nothing to advance Plaintiff's case on this issue. She admittedly possessed no ability to estimate which of Nicholas Young's medical bills were incurred as a result of Schuurmann's misdiagnosis. Ms. Aster's attempt to relay the findings of Dr. Villablanca also carries no weight with the Court.

Regarding the amount of the settlement and its purported interplay with New Mexico's Medical Malpractice Act, the Court is similarly unmoved. The Court can discern no definitive basis for Plaintiff's contention that the "aggregate amount of medical specials provides the only credible and rational explanation for why the tort claims asserted against Dr. Schuurmann settled for an amount that was $200,000.00 more than the statutory limit on medical malpractice recoveries." *See* Plaintiff's Brief at 5. Plaintiff's explanation as to why the settlement exceeded the statutory limit amounts to nothing more than conjecture and speculation. Plaintiff presented no testimony from Mr. Puglisi, Dr. Schuurmann or Schuurmann's malpractice carrier as to why it

---

[7] The Court notes that most settlements include an express disclaimer of liability on the part of the defendant.

6

offered to settle for $700,000. Rather, Mr. David Young acknowledged that by settling he relinquished his right to sue for the wrongful death of Nicholas Young. Defendants argue that the excess amount related to the potential exposure to substantial future medical expenses. Furthermore, the record reflects that Dr. Schuurmann was intent on resolving the case and maintaining confidentiality regarding the terms of settlement.

Finally, both parties cite the deposition testimony of Dr. Mark Erasmus in support of their respective positions. *See* Plaintiff's Brief at 7-9; Defendants' Brief at 6. The Court finds Dr. Erasmus' testimony neither conclusive nor particularly helpful. Plaintiff focuses on the different treatment Nicholas Young would have received had he been diagnosed in November 1990 as opposed to late May 1991. This testimony helps the Plaintiff somewhat, but is incomplete.

It is undisputed that Dr. Schuurmann's negligence caused injury or damage, see MAFF at ¶ 6, thereby requiring a different course of treatment. The differences in treating Nicholas Young's condition based on a November 1990 or May 1991 diagnosis do not, however, demonstrate that Dr. Schuurmann caused a loss or payment of benefits. Rather, Nicholas Young's medical condition clearly necessitated surgery and post-operative treatment regardless of the time of diagnosis. The clear issue in this case is whether Dr. Schuurmann's negligence caused the payment of benefits (loss). Dr. Erasmus' testimony does not answer this question.

Plaintiff chose not to produce a doctor, an actuary, an economist or other specialist to provide an expert opinion regarding any cost differences of treatment based on a proper diagnosis and the actual course of treatment. Plaintiff's claim boils down to the following argument: HCC should be reimbursed because our insured settled a malpractice claim against a physician that treated our insured. This argument is unpersuasive, and the weight of the evidence does not establish Plaintiff's entitlement to reimbursement in this case. Plaintiff has failed to

7

prove that Dr. Schuurmann was responsible for *causing the loss* in this case. Accordingly, the Court will order that judgment enter in favor of Defendants on this claim.

B.  *Intentional Interference With Business Relationship*

The Court need not belabor this contention. The Court will incorporate by reference the authority cited in brief by Plaintiff on this claim. *See* Plaintiff's Brief at 19-20. The previous section makes clear that Plaintiff has failed to establish its right to reimbursement in this case. Furthermore, New Mexico law clearly authorizes equitable reduction of liens, and Mr. Schoth distributed the funds in accordance with Judge Del Santo's order. As a result, the Court finds that Defendants did not knowingly distribute settlement proceeds in a manner contrary to the Celtic reimbursement requirement or in the face of HCC's asserted lien. The Court will order that judgment enter in favor of Defendant Schoth on this claim.

C.  *Defendants' Motion for Sanctions and/or an Award of Attorney Fees*

The Court declines to exercise its sanctioning authority under Federal Rule of Civil Procedure 11 in this case. Furthermore, the Court will not award Defendants attorneys' fees under 29 U.S.C. § 1132(g)(1).

THEREFORE, it is hereby

**ORDERED** that JUDGMENT is hereby entered in favor of Defendants Young and Schoth, and against the Plaintiff Health Cost Controls. Plaintiff's Complaint is DISMISSED WITH PREJUDICE. Defendants shall have their costs by timely filing a bill of costs with the Clerk of Court.

DATED this \_\_\_19th\_\_\_ day of August 1999.

William F. Downes
United States District Judge